Filed 12/20/22  In re D.K CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re D.K., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079145 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ2000221) |
| v. | OPINION |
| D.F. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Conditionally reversed and remanded with directions.

Brent Riggs, under appointment by the Court of Appeal, for Defendant and Appellant T.K.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant D.F.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

D.F. (mother) and T.K. (father) (collectively, parents) appeal from the juvenile court's order terminating parental rights to their minor daughter, D.K.  Parents contend that the Riverside County Department of Public Social Services (the Department) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law.  We agree and conclude that the Department failed to discharge its duty of initial inquiry.  We thus conditionally reverse the order terminating parental rights and remand for further proceedings.

BACKGROUND

We briefly summarize the relevant dependency proceedings and focus on the facts related to the adequacy of the ICWA inquiry, which is the sole issue on appeal.

In December 2019, D.K. was born premature and with a serious medical issue. The Department took protective custody of D.K. when she was four months old.  The hospital was concerned about releasing D.K. into parents' care.  D.K. had ongoing medical needs that required her to have a central catheter in her chest, a gastric tube that drained fluid throughout the day, and an abdominal feeding tube.  The Department filed a petition under subdivision (b)(1) of section 300 of the Welfare and Institutions Code, alleging that D.K. was at substantial risk of serious physical harm or illness.  (Unlabeled statutory references are to the Welfare and Institutions Code.)  The petition contained allegations against both parents.

When the Department interviewed parents before filing the petition, both mother and father reported that they did not have any Indian ancestry.[1]  Father indicated that he wanted his sister to be contacted about placement, which the Department did.

Both parents were present at the detention hearing held on May 7, 2020.  The juvenile court adopted the recommended findings and orders in the detention report and ordered D.K. detained.  The court asked mother if she had any Indian ancestry, and she stated that she did not.  The court made the same inquiry of father, who initially replied that he too did not have any Indian ancestry.  Father then stated that he had Cherokee ancestry.  The court ordered the Department to interview father further on the issue.  The court found that ICWA might apply.

On May 20, 2020, the Department provided notice to the Bureau of Indian Affairs, the Secretary of the Interior, and three Indian tribes—the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee, and the United Keetoowah Band—concerning D.K.'s possible eligibility as a tribe member.  The notice contained information concerning the identity and then-current location of mother, father, maternal grandparents, paternal grandparents, maternal great-grandfather, and two paternal great-grandmothers.

In the jurisdiction and disposition report filed about two weeks later, the Department reported that mother had again denied having any Indian ancestry while father again reported that he was possibly affiliated with the Cherokee tribe.  Parents

---

[1]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

were living with father's sister.  Father was reluctant to provide any information about other family members because he did not understand the relevance.  A paternal aunt was being assessed for placement, and a maternal aunt had been approved for placement pending her completion of certain training.  The Department reported that it had been in contact with a maternal aunt, maternal grandmother, and paternal grandmother.

On the date originally calendared for the jurisdiction and disposition hearing, the court took judicial notice of the documents pertaining to the ICWA notice that the Department had provided the preceding month and found that there was "good ICWA notice in this matter."  The court set a contested jurisdiction and disposition hearing for the following month, in July 2020.

At that hearing, the Department reported that D.K. was medically stable, had been released from the hospital, and had been placed with an approved relative.  The Department reported it had not yet received any responses from the notified tribes.  The court took judicial notice of the ICWA notices filed by the Department.  The court sustained the allegations in an amended petition and took jurisdiction over D.K.  The court removed D.K. from parents' custody and ordered reunification services for both parents.  The court found that the Department had conducted a sufficient inquiry concerning whether ICWA applied and found that D.K. might have Indian ancestry.

The Department subsequently filed the responses it had received from the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, and the

4

Cherokee Nation. All three tribes reported that they did not consider D.K. to be an Indian child with respect to their tribes.

In July 2020, D.K. was placed with a maternal cousin.

At the six-month and 12-month status review hearings in February and July 2021, the court found that the Department had conducted a sufficient ICWA inquiry and that ICWA did not apply. The court noted that no new information had been provided indicating that ICWA might apply. At the 12-month hearing, the court terminated father's reunification services and continued mother's.

In a report prepared for the 18-month status review hearing for mother, the Department reported that in September 2021 mother and father denied having any Indian ancestry. The Department reported that it had no new information indicating that ICWA might be applicable. D.K. continued to reside with a maternal cousin who was willing to adopt D.K. Father provided contact information for another sister who was interested in placement.

At the 18-month status review hearing in December 2021, the court terminated mother's reunification services. The court again found that the Department had conducted a sufficient ICWA inquiry, that ICWA did not apply, and that there was no new information indicating that ICWA might apply. The court set the matter for a section 366.26 hearing.

The contested section 366.26 hearing was continued several times. In a March 2022 report for the original section 366.26 hearing and a postpermanency planning

hearing under section 366.3, the Department reported that it did not have any new information indicating that ICWA might apply.  The Department recommended that the court find that ICWA does not apply.  At a hearing in April 2022, the court signed off on the parties' section 366.3 stipulation and adopted the recommended findings and orders in the March 2022 report.

At the continued section 366.26 hearing in June 2022, the court found that D.K. was likely to be adopted, and the court terminated parental rights.

DISCUSSION

Parents argue that we must reverse the order terminating parental rights because the juvenile court failed to ensure that the Department discharged its duty of inquiry under ICWA-related state law.  We agree and conditionally reverse.

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families.  [Citation.]  California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*); §§ 224-224.6.)  "An Indian child is any unmarried person under 18 who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4); see § 224.1, subd. (b).)" (*Ricky R.*, *supra*, at p. 678.)

Typically, it "is not self-evident whether a child is an Indian child," so "both federal and state law mandate certain inquiries to be made in each case." (*Benjamin M.*,

6

*supra*, 70 Cal.App.5th at p. 741.) The Department "and the juvenile court have an 'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.' (§ 224.2, subd. (a).) The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. [Citation.] ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); § 224.3, subd. (a).) Notice enables the tribes 'to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.)

"The duty of initial inquiry applies in every dependency proceeding. [Citation.] Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).) State law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).) In addition, when [an agency] takes a child into temporary custody, the agency must ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child,' and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and

7

first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)" (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679.)

The duty of further inquiry is triggered by "reason to believe that an Indian child is involved." (§ 224.2, subd. (e), 1st par.) "The duty to provide notice arises only if [the agency] or the court 'knows or has reason to know that an Indian child is involved.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679; 25 U.S.C. § 1912(a); § 224.3, subd. (a).)

The Department argues that parents forfeited their challenge to the adequacy of the Department's initial inquiry by not raising the issue below. *In re Isaiah W.* (2016) 1 Cal.5th 1 forecloses that argument. Because of the continuing duty imposed by ICWA and related state law to inquire whether a child is an Indian child (*id.* at pp. 6, 10-11), the Supreme Court held that a parent may challenge a finding that ICWA is inapplicable in an appeal from a subsequent order, even though the parent did not raise the issue in the trial court or in an appeal from a previous order (*id.* at p. 6). *Isaiah W.* concerned a violation of state law, contrary to the Department's suggestion, and thus precludes forfeiture of the ICWA-related state law issues raised by parents.

We independently review whether ICWA's requirements have been satisfied, because the facts are not disputed. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*).) In this case, the Department failed to discharge its duty of initial inquiry. The Department and the court asked parents about Indian ancestry. But the Department failed to ask extended family members about it despite having been in contact throughout the proceedings with numerous relatives, including maternal grandmother, a maternal aunt, a

8

maternal cousin (the relative caregiver), paternal grandmother, and a paternal sister. Additionally, the Department had the contact information for many other relatives. As the Department correctly concedes, there is no indication in the record that the Department asked any of those relatives about Indian ancestry. Moreover, the juvenile court erred by finding that ICWA did not apply absent any evidence that the Department had fulfilled its duty of initial inquiry. (*In re J.C.* (2022) 77 Cal.App.5th 70, 79-80.)

Relying on *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, the Department argues that we should review for abuse of discretion "the adequacy of an agency's ICWA inquiry" and the trial court's determination that a sufficient inquiry was conducted. That approach is inconsistent with this court's precedent, according to which we independently review whether ICWA has been satisfied on undisputed facts. (*A.M.*, *supra*, 47 Cal.App.5th at p. 314.) We see no reason to depart from our precedent (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 109), so we decline to adopt the standards set forth in *Ezequiel G.*

When an agency "fails to comply with the duty of initial inquiry under state law, we will find the error to be prejudicial and conditionally reverse if 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.' [Citation.] That standard does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679.)

9

In the present case, the ICWA error was prejudicial. The record shows that throughout the proceedings the Department had contact with numerous relatives of D.K.'s who would qualify as extended family members under applicable law. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) Extended family members thus were readily available, and their responses would "shed meaningful light on whether there is reason to believe" that D.K. is an Indian child. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) We therefore must conditionally reverse the order terminating parental rights. At a minimum, the Department must contact the known extended family members to make the initial ICWA inquiry.

The Department argues that we need not reverse and that this case is analogous to *In re A.C.* (2021) 65 Cal.App.5th 1060, in which this "court applied a requirement some other cases have articulated as well: that in order to demonstrate prejudice, 'a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry.'" (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745, quoting *In re A.C.*, *supra*, at p. 1069.) The Department urges us to apply that rule here, arguing that the evidence in the record already demonstrates that ICWA does not apply.

We decline to apply the *In re A.C.* rule for the reasons discussed in *Benjamin M.* First, the risk of a collateral attack on a juvenile court judgment based on later-discovered information about Indian ancestry is "greater, and even more unacceptable, if the agency foregoes basic inquiry into potentially meaningful, easily acquirable information."

(*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745.)  Second, the right to a determination of a child's Indian ancestry belongs in part to a tribe, "but the tribe is not present, and the agency is charged with obtaining information to make that right meaningful."  (*Ibid.*)  Parents have no legal duty to obtain that information.  And their denial of Indian ancestry does not necessarily mean that their family members would do the same.  A parent "may lack knowledge of a child's Indian ancestry even where the child's extended family members possess strong evidence of the child's possible Indian ancestry."[2]  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 432 (*Antonio R.*).)

Moreover, we find unavailing the Department's reliance on the fact that parents were in contact with their extended relatives throughout the proceedings and the relatives did not come forward with any information about possible Indian ancestry or object to the court's ICWA findings.  The duty to develop information concerning whether a child is Indian rests with the agency, not parents or their extended relatives who are aware of the proceedings.  (See *Antonio R.*, *supra*, 76 Cal.App.5th at p. 430.)

For all of these reasons, we conclude that (1) the Department did not comply with the duty of initial inquiry under ICWA-related state law, (2) the court consequently erred by concluding that the Department's inquiry was sufficient, and (3) the error was

[2]     Because the right to a determination of a child's Indian ancestry belongs in part to a tribe and because a parent may not be aware of their own ancestry, we reject the Department's argument that the parents' stipulation that ICWA does not apply foreclosed their challenge to the adequacy of the Department's inquiry.  The Department does not cite any relevant authority supporting its position.  The only authority cited by the Department—*Lawler v. Bannerman* (1970) 8 Cal.App.3d 893—is inapposite, as it involved an appeal from a stipulated judgment in a civil matter (*id.* at p. 894), which bears no similarity to this case.

prejudicial.  We therefore conditionally reverse the order terminating parental rights and remand for the court to ensure that the Department discharges that duty.  We accordingly do not address Father's argument concerning the Department's failure to discharge its duty of further inquiry.

DISPOSITION

The order terminating mother's and father's parental rights is conditionally reversed.  On remand, the juvenile court shall order the Department to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3).  If, after any appropriate inquiry and notice, the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ  
           J.

We concur:

RAMIREZ  
       P. J.  
McKINSTER  
       J.